FILED

OCT 25  AM 10: 17

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVRAHAM MOSCONA,<br><br>                                   Plaintiff,<br>vs.<br><br>CALIFORNIA BUSINESS BUREAU, INC.,<br><br>                                 Defendant. | CASE NO. 10-CV-1468 BEN (CAB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket No. 11] |

Presently before the Court is Plaintiff's Motion for Summary Judgment. (Docket No. 11.) For the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff Avraham Moscona is a resident of San Diego, California. On November 3, 2008, Plaintiff received medical services from Scripps Clinic. The contract between Plaintiff and Scripps Clinic stated that delinquent accounts would accrue interest at the legal rate. On August 16, 2009, Plaintiff received the first bill from Scripps Clinic for these services. The account was due and payable upon receipt, and the bill contained language that the account would become delinquent after 30 days.

Before December 2009, Plaintiff fell behind on the payments owed on the debt. Scripps Clinic referred Plaintiff's account to Defendant California Business Bureau, Inc., a debt collector, for collection. On December 10, 2009, Defendant sent a letter to Plaintiff, demanding payment of $160.28, which consisted of a principal of $144.42 and interest of $15.86. On January 1, 2010, Plaintiff sent Defendant a certified letter, which stated that the claim was disputed and requested

1   validation. Defendant received this letter on January 6, 2010. On January 10, 2010, Defendant

2   contacted three consumer reporting agencies about Plaintiff's account without indicating that Plaintiff

3   disputed the debt. Defendant subsequently sent Plaintiff three demand letters: (1) a letter dated

4   January 20, 2010 demanding that Plaintiff pay $161.53 ($144.42 of principal and $17.11 of interest);

5   (2) a letter dated March 1, 2010 demanding that Plaintiff pay $162.72 ($144.42 of principal and $18.40

6   of interest); and (3) a letter dated April 23, 2010 demanding that Plaintiff pay $164.38 ($144.42 of

7   principal and $19.96 of interest). Each of these letters demanded that Plaintiff pay interest on the

8   account accrued from November 3, 2008, the date Plaintiff received services from Scripps Clinic.

9        Plaintiff filed the present action on July 14, 2010. The Complaint asserts two claims: (1)

10  violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and (2) the

11  Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), CAL. CIV. CODE §§ 1788–1788.32.

12  Presently before the Court is Plaintiff's Motion for Summary Judgment. Both parties having fully

13  briefed this Motion, the Court took the Motion under submission without oral argument, pursuant to

14  Local Civil Rule 7.1.d.1.

15                                  **DISCUSSION**

16       Summary judgment must be granted where the record shows "there is no genuine dispute as

17  to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);

18  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the

19  court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

20  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

21       Plaintiff moves for summary judgment on: (1) the issue of Defendant's attempt to collect

22  interest that Plaintiff was not obligated to pay; (2) the issue of reporting Plaintiff's debt to credit

23  reporting agencies before validation; (3) the issue of reporting Plaintiff's debt to credit reporting

24  agencies without indicating the debt was disputed.

25  **I.   DEFENDANT'S ATTEMPT TO COLLECT INTEREST**

26       Plaintiff alleges that Defendant attempted to collect an unlawful amount of interest in violation

27  of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1), as well as California Civil Code

28  § 1788.17. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading

1  representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

2  Specifically, a debt collector may not falsely represent "the character, amount, or legal status of any

3  debt." 15 U.S.C. § 1692e(2)(A). In addition, a debt collector may not use "any false representation

4  or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). The FDCPA

5  also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to

6  collect any debt." 15 U.S.C. § 1692f. Such "unfair or unconscionable means" include "[t]he

7  collection of any amount (including any interest, fee, charge, or expense incidental to the principal

8  obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted

9  by law." 15 U.S.C. § 1692f(l). Section 1788.17 of the RFDCPA states, "[E]very debt collector

10 collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b

11 to 1692j, inclusive, of . . . Title 15 of the United States Code." CAL. CIV. CODE § 1788.17.

12      Plaintiff received medical services from Scripps Clinic on November 3, 2008. Scripps Clinic

13 first billed Plaintiff for these services on August 16, 2009, for the amount Plaintiff's insurance

14 company stated was Plaintiff's responsibility. According to the Billing and Credit Policy in the August

15 2009 bill, "Scripps Clinic requires payment in full upon patient's receipt of the billing statement."

16 (Mot., Exh. E [Exh. 23 to Bush Depo.].) In addition, "[a]ccounts become delinquent after 30 days

17 unless alternative arrangements have been previously made with a Business Services Representative

18 or Financial Counselor." (*Id.*) According to the Conditions of Registration for Patients of Scripps

19 Clinic, "[a]ll *delinquent* accounts shall bear interest at the legal rate." (*Id.* [Exh. 21 to Bush Depo.]

20 (emphasis added).) Plaintiff's account became delinquent 30 days after the August 2009 bill was sent

21 to Plaintiff, *i.e.*, on September 16, 2009. Therefore, Plaintiff owed interest on his bill beginning on

22 September 16, 2009. Defendant, however, calculated interest on Plaintiff's account beginning on

23 November 3, 2008 in each of the collection letters it sent to Plaintiff, in violation of Sections 1692(e),

24 1692e(2)(a), 1692e(10), 1692f, and 1692f(1).

25      Defendant argues that Plaintiff was obligated to pay for the services on the date he incurred the

26 debt, *i.e.*, November 3, 2008. In support of this argument, Defendant points to the Conditions of

27 Registration for Patients of Scripps Clinic, which states that "patient accounts are due and payable in

28 full, whether or not charges are covered by patient insurance, and regardless of the time of settlement

1  with the patient's insurance carriers." (*Id.*) Although patient accounts may be due and payable in full,

2  only delinquent accounts bear interest. The same Conditions of Registration for Patients of Scripps

3  Clinic also clearly states that "[a]ll *delinquent* accounts shall bear interest at the legal rate." (*Id.*

4  (emphasis added).) Accordingly, Plaintiff's motion for summary judgment on his claims under 15

5  U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1), as well as California Civil Code §

6  1788.17, is **GRANTED**.

7      II.     DEFENDANT'S REPORTING OF PLAINTIFF'S DEBT TO CREDIT REPORTING AGENCIES

8             BEFORE VALIDATION

9          Plaintiff alleges that Defendant continued its collection activity by reporting Plaintiff's debt

10  to credit reporting agencies before Defendant validated the debt, in violation of 15 U.S.C. § 1692g(b)

11  and California Civil Code § 1788.17. If a consumer notifies a debt collector in writing that a debt is

12  disputed, then "the debt collector shall cease collection of the debt . . . until the debt collector obtains

13  verification of the debt" and mails a copy of the verification to the consumer. 15 U.S.C. § 1692g(b).

14  If a debt collector reports a debt to the credit reporting agency before validating the debt, this is a

15  violation of Section 1692(g). *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. App'x 297, 304 n.5 (6th

16  Cir. 2008); *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010); *Edeh v.*

17  *Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035–36 (D. Minn. 2010); *Semper v. JBC Legal*

18  *Group*, No. C04-2240L, 2005 WL 2172377, at *4 (W.D. Wash. Sept. 6, 2005); *but see Breed v.*

19  *Nationwide Ins. Co.*, No. 3:05CV-547-H, 2007 WL 1408212, at *1 (W.D. Ky. May 8, 2007); *Jackson*

20  *v. Genesys Credit Mgmt.*, No. 06-61500-CIV, 2007 WL 2113626, at *3 (S.D. Fla. July 23, 2007).

21          On January 1, 2010, Plaintiff sent Defendant a certified letter, in which Plaintiff advised

22  Defendant that the letter was "a notice sent pursuant to the Fair Collection Practices Act, 15 USC

23  1692g Sec. 809(b) that your claim is disputed and validation is requested. . . . During the validation

24  period your offices must cease and desist from any collection activity on the alleged debt. Further,

25  please be advised that reporting to the credit bureaus an invalidated debt is a violation of the Fair

26  Credit Reporting Act and carries a fine, payable to me." (Mot., Exh. A.) Before validating the debt,

27  however, Defendant reported the debt to credit reporting agencies on January 10, 2010. (*Id.*, Exh. D,

28  at 93.) Defendant admits that it did not validate the debt until January 20, 2010. (Opp. at 4–5.) By

1  reporting the debt to the credit reporting agencies before validating the debt, Defendant violated

2  Section 1692(g).

3        First, Defendant argues that *Quale* is not proper authority for the Court to consider because

4  *Quale* relies on a FTC Staff Opinion Letter, which is not binding precedent.  It is true that "[a]n

5  informal opinion letter from a regulatory agency is not entitled to *Chevron* deference, but it is

6  nevertheless 'entitled to respect' to the extent that it has the 'power to persuade.'" *Edeh*, 748 F. Supp.

7  2d  at 1035 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).  The FTC "view[s]

8  reporting to a consumer reporting agency as a collection activity prohibited by § 1692g(b) after a

9  written dispute is received and no verification has been provided."  Letter from John F. LeFevre,

10  Attorney, Federal Trade Commission, Office of the Secretary, to Robert G. Cass, Compliance Counsel,

11  Commercial Financial Services (December 23, 1997), 1997 WL 33791232, at *1.  In addition,

12  although it is true that the cases Plaintiff cites are not controlling authority, they are persuasive

13  authority.

14        Second, Defendant argues that reporting a debt to a credit reporting agency is not a demand

15  upon a debtor for payment because the debtor is not notified of the communication and because

16  "Credit Reporting is always subject to change by the furnisher of the information updating the state

17  of the Debtor's account by electronic transmission."  (Opp. at 4.)  On the contrary, "threatening to

18  report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's

19  quiver." *Edeh*, 748 F. Supp. 2d  at 1035. "[T]he reality is that debt collectors use the reporting

20  mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls."

21  Letter from John F. LeFevre, 1997 WL 33791232, at *1. Reporting a debt to a credit reporting agency

22  has an adverse consequence on the debtor, as it may damage the debtor's credit rating and the debtor's

23  ability to obtain credit. *See Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1234–35 (C.D.

24  Cal. 2007).  Accordingly, Plaintiff's motion for summary judgment on its claim under 15 U.S.C. §

25  1692g(b) and California Civil Code § 1788.17 is **GRANTED**.

26  ///

27  ///

28  ///

1
2

**III.    DEFENDANT'S REPORTING OF PLAINTIFF'S DEBT TO CREDIT REPORTING AGENCIES WITHOUT INDICATING THE DEBT WAS DISPUTED**

3   Plaintiff alleges that Defendant violated 15 U.S.C. § 1692e(8) and California Civil Code §

4   1788.17 by failing to notify the credit reporting agencies that Plaintiff disputed the debt when it

5   reported Plaintiff's debt to these agencies. The FDCPA prohibits debt collectors from using "any false,

6   deceptive, or misleading representation or means in connection with the collection of any debt." 15

7   U.S.C. § 1692e. This includes "[c]ommunicating or threatening to communicate to any person credit

8   information which is known or which should be known to be false, including the failure to

9   communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Section 1692e(8) "requires a

10   debt collector who knows or should know that a given debt is disputed to disclose its disputed status

11   to persons inquiring about a consumer's credit history." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d

12   64, 67 (1st Cir. 1998).

13   As stated above, on January 1, 2010, Plaintiff sent Defendant a certified letter, in which

14   Plaintiff advised Defendant that the letter was "a notice sent pursuant to the Fair Collection Practices

15   Act, 15 USC 1692g Sec. 809(b) that your claim is disputed and validation is requested." (Mot., Exh.

16   A.) Defendant reported the debt to credit reporting agencies on January 10, 2010, without informing

17   the credit reporting agencies that the debt was disputed. (*Id.*, Exh. D, at 93.) This was a violation of

18   Section 1692e(8).

19   First, Defendant argues that the Consumer Credit Reform Act of 1996, Pub. L. No. 104-208,

20   110 Stat. 3009 (1996), preempts the FDCPA. According to Defendant, Plaintiff does not have

21   standing to sue under the Consumer Credit Reform Act because "only a federal or state regulatory

22   agency can bring an action based upon an alleged initial inaccurate reporting of credit information."

23   (Opp. at 6.) "Plaintiff did not comply with the mandated procedure of utilizing a Consumer Dispute

24   Validation and hereby he has no personal standing to sue." (*Id.* at 7.) Defendant, however, does not

25   cite any authority for the proposition that the Consumer Credit Reform Act preempts the FDCPA, nor

26   is the Court aware of any. In addition, federal law may preempt *state laws*, not other federal laws. *See*

27   *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824) (explaining that the Supremacy Clause of the United States

28   Constitution empowers Congress to enact legislation that preempts *state law*).

1    Second, Defendant argues that Plaintiff's January 1, 2010 letter did not dispute the debt, but
2  merely requested validation. The letter states that it is a "notice sent pursuant to the Fair Collection
3  Practices Act, 15 USC 1692g Sec. 809(b) that your claim is *disputed* and validation is requested."
4  (Mot., Exh. A (emphasis added).) That Plaintiff requested validation under 15 U.S.C. § 1692g
5  necessarily indicated that the debt was disputed. *See* 15 U.S.C. § 1692g(b) (providing that consumers
6  may request validation of "disputed debts"); *Purnell*, 303 Fed. App'x at 304 ("[I]t will always be the
7  case that a § 1692g(b) claim involves a disputed debt."). Plaintiff's letter, therefore, disputed the debt.
8    Third, Defendant argues that even if Plaintiff disputed the debt in the January 1, 2010 letter,
9  Defendant has raised a triable issue of the bona fide error defense. "[A] debt collector is not liable for
10  its violations of the FDCPA if the violation was not intentional and resulted from a bona fide error
11  notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Clark*
12  *v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176–77 (9th Cir. 2006); 15 U.S.C. §
13  1692k(c); CAL. CIV. CODE § 1788.30(e). However, "the bona fide error defense in § 1692k(c) does
14  not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the
15  requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct.
16  1605, 1624 (2010). Here, Defendant's error in handling Plaintiff's letter was a legal error, in that
17  Defendant mistakenly interpreted the FDCPA as indicating that a consumer could request validation
18  of a debt without disputing it. The bona fide error doctrine, therefore, does not apply here.
19  Accordingly, Plaintiff's motion for summary judgment on its claim under 15 U.S.C. § 1692e(8) and
20  California Civil Code § 1788.17 is **GRANTED**.

21                                    **CONCLUSION**

22    For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** on all of
23  Plaintiff's claims. Although Plaintiff briefly argues that he is entitled to statutory damages in an
24  amount up to $1,000 for each violation of the FDCPA and the RFDCPA, Plaintiff does not request an
25  ///
26  ///
27  ///
28  ///

1   exact amount of damages and Defendant does not address the issue.  Accordingly, Plaintiff may submit

2   a motion requesting damages by November 21, 2011, and Defendant may submit a response by

3   December 5, 2011.

4

5       **IT IS SO ORDERED.**

6

7

8   DATED: October 2*, 2011

                          HON. ROGER T. BENITEZ

9                             United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    10cv1468